IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GET ME, LLC, | § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 3:16-CV-00111-N |
| ALEJANDRO ABELLO, *et al.*, | § § § | |
| Defendants. | § § | |

### ORDER

This Order addresses Plaintiff Get Me, LLC's motion for partial summary judgment [32]. The Court grants the motion.

### I. THE PARTIES' TRADEMARK DISPUTE

This case concerns a trademark dispute between two businesses engaged in the transportation and delivery industry. The undisputed facts on the record at summary judgment establish that Plaintiff is a business that provides local transportation for individuals and delivery for various items, such as dry cleaning. Br. in Supp. of Pl.'s Mot. for Partial Summ. J. 1, ¶¶ 4–5. Plaintiff operates via a smart phone application through which consumers make specific transportation or delivery requests. *Id.* at ¶ 6. Alejandro Abello and GetMe, LLC (collectively, "Defendants") operate a business that provides food delivery services for restaurants in Florida. *Id.* at 12, ¶ 4(c). Defendants manage a website that directs visitors to call a telephone number to place food delivery orders. *Id.* at 14, ¶ 4(n).

ORDER – PAGE 1

Both Plaintiff and Defendants utilize design marks that include the same two words. Since 2015, Plaintiff has used a logo that reads "get me" in all lowercase letters, sometimes separated by a small arrow or within a large circle ("Plaintiff's design mark"). *Id.* at 2, ¶ 10. Since 2009, Defendants have used a logo that reads "Get Me" in which the left half of the letter "M" forms the legs of a stylized person holding a bag in one hand and a phone in the other ("Defendants' design mark"). *Id.* at 14, ¶ 4(r). Defendants filed a trademark application for their design mark in 2009, *id.* at ¶ 4(r), which was granted by the U.S. Patent and Trademark Office in 2012, *id.* at 15, ¶ 4(t).

In 2015, Defendants twice sent letters – first to Plaintiff's chief executive officer and then to its counsel – demanding that Plaintiff cease and desist from using its design mark, allegedly in violation of Defendants' trademark. *See id.* at 3–11. Plaintiff subsequently filed the instant action. Plaintiff seeks a declaratory judgment that its use of its design mark does not infringe Defendants' trademark and cancellation of Defendants' trademark registration. *See* Compl. ¶¶ 30–41 [1]. Plaintiff now moves for partial summary judgment only on its request for a declaratory judgment of noninfringement. Defendants have not responded.

## II. THE SUMMARY JUDGMENT LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369

U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "[it] must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex Corp.*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)). Where, as here, the

nonmoving party does not respond to the motion for summary judgment, all evidence the movant presents is presumed to be undisputed. *See Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) ("Although [plaintiffs'] failure to respond does not permit entry of a "default" summary judgment, the court is permitted to accept the movant's evidence as undisputed."); *see also Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (holding, upon nonmovant's failure to respond to a motion for summary judgment, that the district court properly "accepted as undisputed the facts so listed").

### III. THE COURT GRANTS SUMMARY JUDGMENT

Generally, to succeed on a trademark infringement claim, a plaintiff must show (1) ownership in a legally protectable mark and (2) that the defendant's use of the mark "creates a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship of the product at issue." *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) (quoting *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000)) (internal quotation marks omitted). Though the plaintiff in a trademark infringement action typically bears the burden of proof, *see, e.g.*, *Imhaeuser v. Buerk*, 101 U.S. 647, 662 (1880) ("[T]he burden to prove infringement never shifts [to the alleged infringer] . . . ."), a noninfringement action plaintiff does not bear the burden of proving noninfringement. *See Medtronic, Inc. V. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849–50 (2014). Instead, the burden remains with the noninfringement action defendant. *Id.*

Plaintiff brings this action for declaratory judgment of noninfringement under the Lanham Act. Since nonmovant Defendants bear the burden of proof, movant Plaintiff may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Plaintiff here argues only that its design mark does not create a likelihood of confusion among potential customers. Because it has established that there is no genuine dispute as to any material fact on this issue and it is entitled to judgment as a matter of law, Plaintiff is entitled to partial summary judgment.

### A. The Disputed Marks Are Not Likely to Cause Confusion

In determining whether a mark is likely to cause confusion, courts in the Fifth Circuit look to eight nonexhaustive "digits of confusion": (1) the type of trademark, (2) mark similarity, (3) product or service similarity, (4) outlet and purchaser identity, (5) advertising media identity, (6) the alleged infringer's intent, (7) actual confusion, and (8) care exercised by potential purchasers. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). "No digit is dispositive, and the digits may weigh differently from case to case, 'depending on the particular facts and circumstances involved.'" *Id.* (quoting *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 218 (5th Cir. 1985)). Overall, courts should consider all evidence relevant to the question of confusion. *See id.*

***1. Type of Trademark.*** – This digit refers to the strength of the allegedly infringed mark. *See Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998). The

stronger the mark, the more protection afforded to it. *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259 (5th Cir. 1980). Courts classify marks by assigning them to "categories of generally increasing distinctiveness": (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). A generic term "refers to the genus of which the particular product is a species." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985). "A descriptive term provides an attribute or quality of a good." *Two Pesos*, 505 U.S. at 769. "A suggestive term suggests, but does not describe, an attribute of the good; it requires the consumer to exercise his imagination to apply the trademark to the good." *Xtreme Lashes, LLC*, 576 F.3d at 227 (citing *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 791 (5th Cir. 1983)). Suggestive, arbitrary, and fanciful marks "are deemed inherently distinctive and are entitled to protection." *Xtreme Lashes, LLC*, 576 F.3d at 227.

Here, Plaintiff has submitted evidence that establishes that Defendants' design mark is conceptually weak. The words and design of Defendants' design mark are merely generic or descriptive, since they do not need the consumer to exercise imagination to apply the trademark to the service – as is required by suggestive design marks. Importantly, Defendants have not submitted any evidence to demonstrate that their design mark is inherently distinctive and entitled to protection. Accordingly, the Court finds that this factor weighs in favor of Plaintiff.

**2. Mark Similarity.** – The degree of similarity between marks "is determined by comparing the marks' appearance, sound, and meaning." *Elvis Presley Enters., Inc.*, 141

F.3d at 201. "Even if prospective purchasers recognize that the two designations are distinct, confusion may result if purchasers are likely to assume that the similarities in the designations indicate a connection between the two users." *Id.* Thus, "[t]he relevant inquiry is whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated." *Id.*

When comparing marks, "it is the overall impression that counts," *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 502 (5th Cir. 1979), not the "individual features of the marks," *Exxon Corp. v. Tex. Motor Exch. of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980). "Of course, few would be stupid enough to make exact copies of another's mark or symbol. It has been well said that the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts." *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Properties, Inc.*, 616 F. Supp. 2d 622, 638 (N.D. Tex. 2009) (quoting *Baker v. Master Printers Union of N.J.*, 34 F. Supp. 808, 811 (D.N.J. 1940)).

Here, Plaintiff has submitted evidence that establishes that its design mark is not similar to Defendants' design mark. Though the two design marks include the same two words, they are stylized in different manners, thereby preventing confusion. Whereas Defendants' design mark reads "Get Me" in which the left half of the letter "M" forms the legs of a stylized person holding a bag in one hand and a phone in the other, Plaintiff's design mark reads "get me" in all lowercase letters separated by a small arrow or within a large circle. Importantly, Defendants have not submitted any evidence to demonstrate that

the two design marks at issue are similar enough to cause confusion among consumers. Accordingly, the Court finds that this factor weighs in favor of Plaintiff.

     *3. Service Similarity.* – In evaluating the similarity of products or services, exact similarity is not required. "The greater the similarity between the products and services, the greater the likelihood of confusion." *Elvis Presley Enters.*, 141 F.3d at 202. There may be a likelihood of confusion even if the parties are not direct competitors. *Id.*; *Professional Golfers Ass'n of America v. Bankers Life & Cas. Co.*, 514 F.2d 665, 669 (5th Cir. 1975) ("This court has repeatedly held that direct competition is not the sine qua non of trademark infringement; rather the gist of the action lies in the likelihood of confusion to the public."). A court may find similarity if a product or service falls within a senior user's natural zone of expansion. *See Westchester Media*, 214 F.3d at 666–67.

     Here, Plaintiff has submitted evidence that establishes that its services are not sufficiently similar to Defendants' services. Whereas Defendants provide food delivery for restaurants located in Florida via website and telephone calls, Plaintiff provides local transportation for individuals and delivery for various items, such as dry cleaning, via a smart phone application. Importantly, Defendants have not submitted any evidence to demonstrate that the services offered by the parties are similar enough to confuse consumers. Accordingly, the Court finds that this factor weighs in favor of Plaintiff.

     *4. Outlet and Purchaser Identity.* – "Dissimilarities between the retail outlets for and the predominant consumers of [the parties'] goods lessen the possibility of confusion, mistake, or deception." *Amstar Corp.*, 615 F.2d at 262. Differences in the parties' customer

bases can also lessen the likelihood of confusion. *See Exxon Corp.*, 628 F.2d at 505–06; *Amstar Corp.*, 615 F.2d at 262.

Here, Plaintiff has submitted evidence that establishes that both its outlets and purchasers are different than those of Defendants. While Defendants make sales via telephone calls, Plaintiff makes sales via a smart phone application. Additionally, whereas Defendants' stated clients are the restaurants for which Defendants deliver food, Plaintiff's purchasers are individuals who seek personal transportation or delivery. Importantly, Defendants have not submitted any evidence to demonstrate that their retail outlets and predominant purchasers are similar enough to confuse consumers. Accordingly, the Court finds that this factor weighs in favor of Plaintiff.

**5. *Advertising Media Identity.*** – "[A] court looks for advertising in similar media as an indication that consumers might be confused as to the source of similar products." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 332 (5th Cir. 2008). "[T]he greater the degree of overlap in the marketing approaches of the two entities, the greater the likelihood of confusion." *Quantum Fitness Corp. v. Quantum LifeStyle Centers, LLC*, 83 F. Supp. 2d 810, 827 (S.D. Tex. 1999).

Here, Plaintiff has submitted evidence that establishes that the advertising media used by both parties differ in breadth and depth. While Defendants advertise their service solely on their website, Plaintiff advertises its services on its smart phone application, in movie theaters and airports, at sporting events, college campuses, and music festivals, and via radio and newspaper. Also, whereas the undisputed record demonstrates that Defendants have

spent little money on advertising, Plaintiff has spent several hundreds of thousands of dollars on advertising. Importantly, Defendants have not submitted any evidence to demonstrate sufficient similarity between the advertising media used by the parties. Accordingly, the Court finds that this factor weighs in favor of Plaintiff.

*6. Alleged Infringer's Intent.* – The alleged infringer's intent to deceive buyers is an additional factor to be considered in determining likelihood of confusion. *Exxon Corp.*, 628 F.2d at 506. If a party can show that the alleged infringer "adopted a mark with the intent of deriving benefit from the reputation of the [party], that fact alone 'may be sufficient to justify the inference that there is confusing similarity.'" *Id.* (quoting RESTATEMENT OF TORTS § 729, cmt. f (1938)). The alleged infringer's intent is "a 'critical factor' in determining whether there is a likelihood of confusion." *Westchester Media Co. LP v. PRL USA Holdings, Inc.*, 103 F. Supp. 2d 935, 956 (S.D. Tex.1999), *rev'd on other grounds*, 214 F.3d 658 (5th Cir. 2000).

Here, the undisputed record contains no evidence that establishes that Plaintiff adopted its design mark with the intent to derive a benefit from Defendants' reputation. Importantly, Defendants have not submitted any evidence to demonstrate that Plaintiff intended to trade on any goodwill in Defendants' design mark. Accordingly, the Court finds that this factor weighs in favor of Plaintiff.

*7. Actual Confusion.* – Although not necessary to find a likelihood of confusion, the best evidence of likelihood of confusion is provided by evidence of actual confusion. *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 46 (5th Cir. 1975). "To show actual confusion, a

[party] may rely on anecdotal instances of consumer confusion or consumer surveys." *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 485 (5th Cir. 2004). A party seeking to establish that a likelihood of confusion exists in an infringement action may utilize the following methods of proof: "(1) survey evidence, (2) evidence of actual confusion, or (3) arguments based on a clear inference arising from a comparison of the conflicting marks and the context of their use." 3 MCCARTHY § 23:10.

Here, the undisputed record presents no evidence of actual consumer confusion between Plaintiff's and Defendants' design marks. Importantly, Defendants have not submitted any evidence demonstrating that consumers have actually confused the parties' design marks. Accordingly, the Court finds that this factor weighs in favor of Plaintiff.

***8. Care Exercised by Potential Purchasers.*** – "Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Smack Apparel Co.*, 550 F.3d at 483. In *Smack Apparel Co.*, the Fifth Circuit found that purchasers of $18 t-shirts would exercise little care and that this lack of care weighed in favor of finding a likelihood of confusion. *Id.*

Here, Plaintiff has not submitted evidence relevant to this analysis, such as the costs of using the services offered by Plaintiff and Defendants. Importantly, however, Defendants have also not submitted evidence demonstrating that potential purchasers would exercise little care in using Plaintiff's or Defendants' services. Accordingly, the Court finds that this factor weighs in favor of Plaintiff.

## CONCLUSION

Upon review of the law and the summary judgment evidence submitted in this matter, the Court finds that a likelihood of consumer confusion does not exist between Plaintiff's and Defendants' design marks. The record contains no evidence that creates a genuine issue of material fact regarding likelihood of confusion. Indeed, all eight of the factors support Plaintiff's position. Thus, the Court grants Plaintiff's motion for partial summary judgment and orders that Plaintiff's use of its design mark does not infringe on Defendants' trademark.

Signed September 20, 2017.

_____
David C. Godbey
United States District Judge